GEORGIA SOUTHERN AND FLORIDA RAILWAY CO.
*v.* SOUTHERN RAILWAY EQUIPMENT · CO.

1. When exceptions to the report of a master are filed by one of the parties to a case and are specifically denominated exceptions to findings of fact and exceptions to findings of law, and it is mutually agreed that the judge may pass on all questions of law and fact without the intervention of a jury, and a judgment is rendered sustaining all of such exceptions and a motion for a new trial made and heard without objection, this court will not refuse to consider an assignment of error, taken to the overruling of the motion for new trial, on the ground that the error sought to be corrected should have been assigned by a direct bill of exceptions to the judgment rendered.
2. When the owner of a car leased it to a railroad company to be used in the interchange of traffic with other railroads, and not only the contract but the evidence of plaintiff also clearly indicated that payment for damages for the destruction of the car so leased, when used in such traffic, should be made under a system known in railroad usage as the "Master Car Builders Rules," the liability of another railroad company for the destruction by it of the car, which was received from the lessee in the interchange of traffic, is to be determined by such rules.
3. Fairly interpreted, the rules of the Master Car Builders Association fix the ownership of a leased car, used in the interchange of traffic, in the railroad company whose name it bears, for the purpose of a settlement of all matters concerning such car, and, under their operation, a connecting railroad company is liable to the lessee company and not to the lessor for loss or damage to such car while being operated on the connecting road.

Argued February 14, — Decided April 19, 1899.

Exceptions to auditor's report. Before Judge Felton. Bibb superior court. April term, 1898.

*John I. Hall* and *Dessau, Bartlett & Ellis*, for plaintiff in error. *Alexander & Victor Smith* and *Hill, Harris & Birch*, contra.

LITTLE, J. The Southern Railway Equipment Company filed its intervention in the case of McTighe & Co. *et al. v.* Macon Construction Company *et al.*, being a petition in equity, pending in the superior court of Bibb county. Before the ter-

mination of the case, the property of the Georgia Southern & Florida Railroad Company was sold under the order of the court, and a new company known as the Georgia Southern & Florida Railway Company was formed by the purchasers, which assumed the liabilities of the receiver of the Georgia Southern & Florida Railroad Company.    The petition of the intervenor set out that it was a corporation organized under the laws of Georgia; that the receiver of the Georgia Southern & Florida Railroad Company was indebted to it in the sum of four hundred and seventy dollars, besides interest from the 14th day of October, 1891, because on that day the intervenor was the owner of a certain ventilated car, number 1033, which, with other similar cars, the intervenor had leased to the Atlanta & Florida Railroad Co., under a contract known as a mileage guarantee, and under that contract the title of the car was reserved in the intervenor; that the Atlanta & Florida R. R. Co. had no interest in this car, except the right to use it on payment of the mileage or rental contracted to be paid; that the car, in accordance with the usages of railroad service, was transferred from one of the trains of the Atlanta & Florida R. R. Co. to one of the trains of the Georgia Southern & Florida R. R. Co., the latter being at the time operated by Sparks as receiver; that in the operation of the train of the Georgia Southern & Florida R. R. Co., the car was, on October 14, 1891, totally destroyed; that afterwards the intervenor, in accordance with the usage among railroads obtaining in such cases, made out a bill against the Georgia Southern & Florida Railroad Company and against the receiver, in accordance with the Master Car Builders Rules, which are recognized by all railroad companies as the proper basis upon which such bills should be made out, and presented it to the Georgia Southern & Florida Company and to the receiver, and payment was refused.    The intervenor further claimed that it had the right to be paid the value of the car as one of the expenses of operating the Georgia Southern & Florida R. R. by the receiver, etc., and prayed for judgment with certain rights of priority.

The intervention was referred to a master, who reported the evidence submitted, in substance, as follows: Spalding testi-

fied: Am superintendent of the Southern Railway Equipment Company. Car 1033 was its property; ownership was indicated by an iron plate on each side near the end; the car was leased to the A. & F. R. R. Co. That company did not own, have, or assert any equity in the cars; the car was in possession of the A. & F. R. R. Co. for use in railroad business, and that company was authorized to use it for the purposes for which railroad-cars are generally used in their common connecting traffic with other companies. There was no limitation of this use. The general manager of the Georgia Southern & Florida R. R. Co. informed me that the car was destroyed on the Georgia Southern & Florida Railroad about October, 1891. The A. & F. R. R. Co. got behind under the terms of their lease. We then repossessed ourselves of the cars. The car in question was the only one we could not get; finally traced it to the G. S. & F. It was worth, according to the rules of the Master Car Builders Association, $470. "Q. This system of leasing cars is known by what rules? A. The Master Car Builders Rules; and that is, if a road destroys a car it shall settle with the owners of the car. The car should have been settled in accordance with the Master Car Builders Rules. Q. State whether or not these rules govern all the systems of interchange of freight-cars for traffic. A. Yes, sir, I think nearly all the roads are members of the association. We billed this car for just what we were entitled to under these rules. It does not matter what the cost of the car; the amount it could be billed for is fixed by these rules. This is done to prevent trouble where an owner might claim a fancy car costing a large sum. Q. State whether or not the bill was made out against the Georgia Southern & Florida Railway Company in accordance with the rules of the Master Car Builders Association. A. Yes, sir, it is correct and is made out in accordance with the rules of the Master Car Builders Association, in 1891. Q. Outside of the special provisions of the Master Car Builders Rules, what is the custom, the universal custom, with reference to making settlements where a railroad company destroys a car while in its possession while on its railroad? A. From my own experience I hardly know how to answer that question, because I would not attempt

to render a bill unless it was in accordance with the rules; it would be useless to do so. These rules are binding, and have as many decisions written and printed as you find in the law-books. I have got a stack of them. They refer everything to arbitration. Q. Suppose your company was dealing with a railroad company which did not adopt those rules? A. I would bill the car according to those rules. Q. But where neither company was a member of the Master Car Builders Association? A. They would settle with me according to those rules. I do not know of any such cases; we have always conformed strictly to the rules. We were not members at that time, but we always observed those rules. I would under no circumstances send a road a bill, whether they were members or not, except according to those rules. Q. State whether or not that is the general custom among all the railroads in the country. A. I think it is. Q. Whether they are members or not? A. Yes, sir. Q. Have you ever had any such dealings? A. We have always practiced the one custom. Q. You have not operated with any railroads except such as were members of this association? A. I do not know. Q. Then this custom you speak of is only from surmise? A. I can not say it is a surmise. I always followed that rule. Q. State whether or not that was true before you became members of the Master Car Builders Association. A. Yes. Q. Is it not true that railroads go according to those rules whether they are members of the association or not? A. It is my impression they do. Q. Have you never had occasion to present bills for loss of cars to companies that were not members of the Master Car Builders Association? A. We have never had any trouble; we have always made out our bills according to the rules. Q. Do you make them out without stopping to examine whether the road against which the bill is may be a member of the association? A. Yes, it makes no difference."

Plaintiff put in evidence lease contract, in substance as follows: The Southern Railway Equipment Company leased to the Atlanta & Florida Railroad Company one hundred cars, among them the car in question, 1033. The Atlanta & Florida Railway Company agreed to pay the rental, to wit, a mini-

mum mileage guarantee of 1,000 miles per month, at 3/4 of a cent per mile, on the 15th day of each month, commencing the first month after delivery; and the Atlanta & Florida Railway Company agreed to take said cars and exercise all care for them as if they were their own property. The said Southern Railway Equipment Company agreed to pay for repairs which might be made upon the cars, provided the same are rendered according to Master Car Builders Rules now in effect; and it was agreed that all bills against said Atlanta & Florida Railway Company for repairs made to these cars must be rendered by the Atlanta & Florida Railway to said Southern Railway Equipment Company, showing exception and defect card, and that said Southern Railway Equipment Company should refund the said Atlanta & Florida Railway Company all money which might have been paid, provided the charges are made against the Atlanta & Florida Railroad according to Master Car Builders Rules now in effect. The said Atlanta & Florida Railway Company agreed to pay to the Southern Railway Equipment Company for each and all of said cars which might be destroyed or damaged by fire, wreckage, or otherwise, their full value at the time of such destruction or damage, according to the Master Car Builders Rules now in effect. The Atlanta & Florida Railway Company agreed to collect all mileage earned by the cars on their own line or lines, and also all mileage earned on roads other than said Atlanta & Florida Railway, and place the entire earnings to the credit of the said Southern Railway Equipment Company. The cars were lettered "Atlanta & Florida," and the marks of ownership of the Southern Railway Equipment Company were shown as stated by Spalding. Several letters between the officers of the Equipment Co. and G. S. & F. Co. were introduced, not necessary to be reported in full. They contained a demand on the part of the Equipment Co. that the G. S. & F. should pay for the car, and a declination of the G. S. & F. to do so, because the A. & F. R. R. Co., it was alleged, had destroyed cars of the G. S. & F., for which the latter had not been paid, and expressing the intention of the latter to credit the account of the A. & F. with the value of the car. Certain rules copied from the Code of

Rules of Master Car Builders Association were also introduced, as follows:

"Rule 10. In the case of cars belonging to private parties and corporations other than railway companies, or that are not cared for or controlled by a railroad company, the repairs or renewals of all parts that fail under fair usage, or on account of ordinary wear and tear, or bad or inferior design, may be made by railroad companies, and shall be paid for by the owners."

"Rule 21. The company on whose line the bodies or trucks are destroyed shall report the fact to the owner not later than 30 days after their destruction, and shall have its option to rebuild or settle for the same."

"Rule 23. Depreciation due to age shall be estimated at six per cent. per annum upon the yearly depreciated value of the bodies and trucks only, provided, however, that allowances for depreciation shall in no case exceed sixty per cent. of the value new. The amount, $50, for air-brakes shall not be subject to any depreciation."

"Rule 24. If only the body of a car is destroyed and the company destroying it elects to return the trucks, they shall be put in good order or accompanied by a defect card, and delivered free of freight or other charges to the nearest point on the road of the company owning the car, and the number, line and class of car destroyed shall be stenciled or painted on each truck so returned."

"Rule 27. In rendering bills, cars shall be treated as belonging to railway companies whose names or initials they bear, except in case of line cars, where the equipment list of the general officers of the line designates a party to make settlement."

It was shown that both the G. S. & F. and the A. & F. R. R. Companies were members of the Master Car Builders Association as early as 1891.

The master reported, as his findings of fact, in substance as follows: 1st. The evidence sustains the claim that the car was of the value alleged, and destroyed as set out in the intervening petition. 2nd. That the Atlanta & Florida Railroad Company had a written contract with the intervenor, entered into June 28, 1890, to lease or rent from the intervenor 100

cars for ten years. That no title to the cars passed to the A. & F. R. R. Co. under the contract. That the intervenor retained the ownership of all the cars including the one destroyed. 3rd. That intervenor would be entitled to the proved value of the car, with interest, if the defendant corporation is liable at all. 4th. That the intervenor had never been a member of the Master Car Builders Association. 5th. That in the contract for the lease or rent of the cars there is an express agreement on the part of the A. & F. R. R. Co., accepted by the Equipment Co., that the Atlanta & Florida Railroad Co. would pay the intervenor for each and all of said cars which may be damaged by fire, wreckage, or otherwise, their full value at the time of such destruction or damage, Master Car Builders Rules now (then) in effect. 6th. That the G. S. & F. R. R. Co. was not a party to said contract or agreement. The master reported his findings of law in substance as follows: That rule 21 of the Master Car Builders Association does not apply to the case under consideration. That the Equipment Company was not a member of the Master Car Builders Association; and whilst it contracted with the Atlanta & Florida Railroad Company that the repairs made and payment for damages to, or destruction of, cars by fire, wreckage, or otherwise, should be governed by the rules of such association, it expressly stipulated how the matter of repairs should be adjusted, and provided in express terms for the payment of lost or destroyed cars by the A. & F. R. R. Co. That there was nothing in the contract indicating a purpose to look to railroad companies, on whose lines the cars of the Equipment Company might be destroyed, for payment, or the application of any rule of the Master Car Builders Association in relation to destruction of cars by other lines than the railroad contracted with. The contract is clear and unambiguous, and the intervenor elected whom it would hold responsible for losses of this character; and no recovery could be had against Georgia Southern & Florida Railroad Company.

The intervenor filed exceptions to the report of the master, to the 4th and 5th findings of fact, on the ground that they were wholly irrelevant to the issues involved; and it also filed

exceptions to his findings of law: That the conclusion of the master that the A. & F. R. R. is not liable for the value of the destroyed car does not follow from the findings of fact and the evidence in the case; because the agreement of the A. & F. R. R. Co. to pay for the destruction of the car does not in any way affect the right of the intervenor to recover its value from the G. S. & F. R. R.; because, under the findings of fact reported the respondent is liable for the value of the car, and the intervenor entitled to a judgment for the same. When the exceptions to the master's report came on to be heard, it was agreed that the judge should determine all questions of law and fact, without the intervention of a jury. It was then found and adjudged that the intervenor's exceptions to the master's report be sustained and the report be set aside; and a judgment was given against the Georgia Southern & Florida Ry. Co. for the principal and interest in favor of the intervenor. Afterward the G. S. & F. Ry. Co. moved for a new trial. The first five grounds of the motion were, that the court erred in sustaining the 1st, 2d, 3d, 4th, and 5th exceptions to the master's report; sixth, because the court erred in overruling the motion of the defendant to send the case back to the master, that the defendant might establish its claim of set-off against the A. & F. R. R. Co.; and lastly, because there was not such privity of contract between intervenors and the G. S. & F. R. R. Co., or its receiver, as would authorize a recovery in this case. The motion for new trial was overruled, and the G. S. & F. Ry. Co. excepted. The defendant in the brief raises a question of practice, to which reference will presently be made. Beyond this, there are only two questions which we deem necessary to consider in determining the issue raised by the record, to wit: 1st. Are the rights and liabilities of the parties to be ascertained by the rules prescribed by the Master Car Builders Association, or by the general law? 2d. If the rights of the parties are to be determined by the rules so prescribed, does a proper construction of such rules authorize a recovery against the railroad company by whom the car was being used when it was destroyed?

1. The defendant insists that an affirmance of the judgment

13

of the court below is a legal necessity, because plaintiff in error should have excepted directly to the judgment of the court, and a motion for a new trial could not legally have been entertained; that there was no exception to the findings of fact by the master, and therefore no question to be submitted to a jury, and, under such conditions, only a direct exception to the decree of the judge would bring the question of the correctness of such judgment or decree properly before this court. A number of authorities are cited to sustain the contention, the binding force of which we recognize, but deem them inapplicable to the case as it is here presented. The record shows that the defendant in error filed what it denominated exceptions to the 4th and 5th findings of fact, as well as certain exceptions to the findings of law. With such exceptions filed, it was agreed between the parties that the judge should determine all questions of law and fact without the intervention of a jury; and it would seem that, up to this point at least, all parties considered that exceptions of fact were filed—otherwise, no agreement was necessary. In the bill of exceptions it is recited that the case was submitted to the presiding judge to be determined and decided without the intervention of a jury; "both as to the law and facts involved in said exceptions." So that not only the parties, but the judge also, treated the exceptions filed as involving issues of fact as well as law. No question was raised in the court below which invoked any ruling as to the character of the exceptions filed and which were separately classified in terms as exceptions to the findings of fact, and as exceptions to the findings of law. Some of these exceptions required a consideration of the evidence submitted. The parties and the court having dealt with the case as involving exceptions of fact, and no question having been raised and passed upon on the hearing of the motion for new trial which involved the correctness of that method of procedure, we will treat the case in the same way, and not undertake the nice discrimination of ascertaining whether some of the grounds set out do not really come under the classification of exceptions of fact.

2. The next question is, are the rights of the parties to be determined by the Master Car Builders Rules? No contention

was made, and none could have been successfully urged, that the parties might not, if they had chosen to do so, legally have bound themselves to have their rights measured by the standard of those rules.   There were no *express* contractual relations existing between the intervenor and the Georgia S. & F. R. R. Co. ; and unless from the acts of the parties a mode of settlement for the destruction of the car other than by the general rule of law which protects the rights incident to the ownership of property was understood and assented to by each, no arbitrary rule varying the liability so fixed will take the settlement out of the operation of such general rule.   The G. S. & F. Co. and the A. & F. Co. were members of the Master Car Builders Association, and between them the Master Car Builders Rules were undoubtedly in force.   The Equipment Company was not a member, and whether its rights were to be affected by such rules must be ascertained by reference to the intentions of the parties manifested by their acts.   Because there was no express contract entered into between the intervenor and G. S. & F. Company, it by no means follows that there was no privity of contract existing between them in relation to the damage or destruction of the cars of the former by the latter.   Whether there was or not must depend upon what was done by the parties.   Acts may, as a matter of fact, imply a contract between the parties, the evidence of which is to be found in what was done by them in relation to the subject-matter.   Clark on Contracts, 24.   In order to ascertain the intention of the owner, it is legitimate to look to the contract under which it parted with the possession of the car which was destroyed.   This instrument provided for a minimum rental for each car of one thousand miles per month at three fourths of a cent per mile, and charged the lessee with the duty of collecting this rental when it should be earned on other lines.   So that it was in the contemplation of the owner that the car would be used by railroads other than the lessee, and, of course, it must have been in contemplation that the car might be destroyed in such use. Again, by the contract the lessee undertook and agreed to pay the owner for each and all of the cars which might be destroyed or damaged by fire, wreckage, or otherwise, their full value at

the time of such destruction or damage, according to the Master Car Builders Rules then in effect. It is perfectly clear from the terms of the contract that at the time of its execution the owner intended and agreed that this car might be used by other railroads, including the G. S. & F. Co., for traffic purposes; that the A. & F. Co. should pay the owner for its loss or destruction on such other roads, and that the settlement should be made by the Master Car Builders Rules. We do not pursue this line of reasoning to arrive at the conclusion that the owner of property may not hold his lessee responsible for its loss and at the same time have a separate right of action against the person who caused the loss—these two rights could exist in harmony,. —but to call in question the intention of the owner as to whom it should look in case a car so leased was damaged or destroyed, and the existence of these separate rights in this case. The owner would, of course, be entitled to but one recovery for the value of his property, and when he chose to provide by contract that other-railroad companies should use its cars, for the rental of which, when so used, the lessee was bound to pay, and in this immediate connection stipulated also that the lessee should pay for any car destroyed on another road, the inference is legitimate that it intended to look exclusively to the lessee for such payment, and to apply the Master Car Builders Rules in such settlement. So much, then, for the intention of the lessor and lessee as to the rule of settlement for a damaged or destroyed car.

After setting out the fact of the destruction of the car by the G. S. & F. R. R., the significant allegation is made in the petition *that the petitioner, in accordance with the usage among railroads obtaining in such cases*, made out a bill against the G. S. & F. Co., and that such bill was made out in accordance with the Master Car Builders Rules which are recognized by all the railroad companies as the proper basis for the same. Fairly interpreting this petition, under the rule that it is to be taken most strongly against the pleader, it would seem to be logical to hold that the right of the intervenor to have his bill paid by the G. S. & F. R. R. Co. was rested on the usage among railroads obtaining in such cases, and not upon its independent and distinct right to have the bill paid because of its ownership

of the property. This construction of intervenor's case as made by the petition is not only strengthened, but seems to be made manifest, by the testimony it introduced before the master to prove the right of recovery. Spalding, the superintendent of the Equipment Company, testified that the ownership of the car was indicated by the lettering on an iron plate on each end of the car; that the A. & F. Company held it under a lease; that the lessee had the right to use it as cars are used in connecting traffic with other companies, and that there was no limitation of this use. He further testified that this system of leasing is known by the name of the Master Car Builders Rules, and that the car should have been settled for in accordance with those rules; that the bill for the car was made out in accordance with the rules of the Master Car Builders Association in 1891; that a car would be settled for under those rules where neither party was a member of the association; and that such was the general custom among all railroads in the country, whether they were members or not. We have thus the intention, as expressed by the contract of lease, that the rules shall govern all settlements. We find also that the petition filed to recover is based on the usage among railroads, known as the Master Car Builders Rules; and finally, the evidence introduced by the plaintiff is ample to determine the point that, under the system of leasing cars adopted by the intervenor, it was not only intended but understood that claims for damage to, and destruction of, cars were to be rendered and settled under the condition imposed by the Master Car Builders Rules.

3. We come now to consider the question whether, under a proper construction of these rules, the intervenor is entitled to have a recovery against the plaintiff in error, which received the car, under the usage of railroads, from the lessee. The rules of the Master Car Builders Association were introduced in evidence. Rule 21 stipulates, that the company on whose line the cars are damaged or destroyed shall report the fact to the owner, not less than thirty days after such destruction, and shall have its option to rebuild or settle for the same. Another rule, 27, provides that in rendering bills cars shall be treated as belonging to railway companies whose names or initials they

bear (with a certain exception not necessary to be referred to). It is in evidence that the cars were lettered; "Atlanta & Florida." So that under this rule this car was to be treated as belonging to the Atlanta & Florida R. R. Company, and bills for damage or destruction to it could alone be rendered to the last-named company, the owner, by these arbitrary rules. That this interpretation is a correct one is further seen by rule 24, wherein it is provided that if, when the body of a car is destroyed and the company destroying it elects to return the trucks, they shall have it put in good order or accompanied by a defect card and delivered, free of freight or other charges, to the *nearest point on the road of the company owning the car*. The defendant in error is engaged in the business of furnishing cars to railroad companies, and does not own any railroad. Hence the reference in the rule must necessarily be to the company whose name appears on the car, that is the lessee, which, by rule 27, as we have seen, is to be treated as the owner. Taking all the evidence together, the conclusion must be arrived at, that the lessor fixed the liability for damaged or destroyed cars on the lessee, and also intended that the right of recovery for such damages should be governed by the Master Car Builders Rules, which give it to the lessee. The lessee and the defendant company were members of the Master Car Builders Association, had cognizance of the rules in force, and were governed by their provisions. So that, while no express contractual relations existed between the Equipment Company and the defendant company when the latter received the cars from the lessee under the usage existing between railroads as to the manner of settlement for injuries which might be done to the cars, its duty as to the settlement is to be determined by that usage. That the lessee became insolvent and unable to respond to the owner does not change the legal relation of the parties. The lessor took the risk of that condition when it made the contract. It is a risk incident to every character of business, and one against which prudence can not always provide. It was neither the intention nor the contemplation of the lessor that it would look to any connecting road for damage to its cars when it leased them for this general traffic business. It was not the intention

of the defendant company, when it received the car which was injured, to be held liable to any one except the company whose name the car bore.   And it must be held that the liability of the G. S. & F. Company is to the lessee company, and the Equipment Company has no right of action against the defendant company to recover the value of the car destroyed.   The master having so decided, and the court below having sustained exceptions to this report of the master, a new trial is awarded.

*Judgment reversed.   All the Justices concurring.*